UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 05-20944-Civ-LENARD/TORRES

OMAR HOGBEN,

       Plaintiff,

vs.

WYNDHAM INTERNATIONAL, INC.,

       Defendant.

_____/

**<u>OMNIBUS ORDER</u>**

This matter is before the Court on a series of pending motions that originate with a Notice of charging lien filed by Attorney Peter Capua ("Capua") in this case on April 4, 2007 [D.E. 74]. Capua is not counsel of record in this case, but his notice claims that he has been representing this Plaintiff in seven other cases filed primarily in Circuit Court in Miami-Dade County, plus one federal action that was before Judge Jose Martinez. The notice states that he was deprived of payment for his services rendered in these other cases through the parties' stipulated dismissal in this case, for which Capua requests payment from the recovery generated by that settlement.

Following the filing of this Notice, Plaintiff, through his counsel of record William Jones, Esq. ("Jones"), filed an original and supplemental Motion to Strike the charging lien [D.E. 89, 90], together with a Motion for hearing on those motions [D.E. 103]. Capua, after receiving proper notice of those Motions, has filed a response in opposition. [D.E. 96, 104]. That response also included an alternative Motion to Intervene [D.E. 97] that, as an alternative to his rights under the notice of charging lien, seeks to formally intervene as an interested party in the case. He also filed a Motion to Prohibit Distribution of

Settlement Funds [D.E. 94] pending adjudication of his charging lien. Plaintiff opposes both these motions. [D.E. 99].

Additionally, Capua has also served several discovery requests in this matter to develop his charging lien case, which requests have generated four motions to compel as against Plaintiff, Jones, and the lawyers representing the defendant in this case and the state proceedings. [D.E. 109, 110, 111, 118].

The parties consented to magistrate judge disposition of all motions in the case, excepting trial, and thus the pending motions are ripe for disposition [D.E. 21].

For the reasons that follow, Capua's attempt to enforce a charging lien in this case is beyond the jurisdiction of the Court and beyond the power of a charging lien action under state law. Therefore, Plaintiff's motion to strike the lien must be granted, and the motions to intervene and prohibit distribution must be denied. All other matters before the Court are moot and this case shall remain closed.

## I.   BACKGROUND

A lengthy recitation of all the particular details of the parties' pending dispute is not necessary, given the Court's rulings. The short version of the story is that attorney Jones was first retained by Plaintiff in approximately November 2000 to file a lawsuit that relates to the unauthorized use of photographic images of Plaintiff, a model. Plaintiff retained Jones again in 2004 to file another action, this time against the Defendant in this case, Wyndham International, seeking the same type of relief for the claimed unauthorized use of photographs. That action was filed in state court on March 1, 2005, which was related to the "Rose Hall" photo shoot that was already the subject of litigation between other clients of Jones and Wyndham. Wyndham removed the case to federal court, which rejected Plaintiff's effort to remand the case in order to consolidate the litigation.

At about the same time, Plaintiff first retained Capua to file a similar lawsuit against a different defendant involving a different photo shoot. That lawsuit was filed in state court and removed to federal court. Capua represented Plaintiff through the end of the case, which settled shortly before trial and was dismissed in November 2005.

Plaintiff retained Capua again in 2005 to prosecute claims against other entities, this time involving the photographs taken during the "Rose Hall" shoot that were also at issue in this case. Capua understood that Plaintiff had already filed this action, through Jones, to pursue a claim against Wyndham. Plaintiff retained Capua, however, to file actions against other defendants that were allegedly liable for damages from the unauthorized use of the photographs, such as Yahoo Inc., American Express, Plansoft, Google, Travelocity.com, and Group Incentive Marketing. Capua entered into a repersentation agreement for a contingent fee for the filing of these actions, which were filed in state court in 2005 and 2006.[1] Capua undertook all the work required in these related actions on Plaintiff's behalf.

In the meantime, this federal action against Wyndham then proceeded in 2006, but with only Jones appearing as counsel of record for Plaintiff. Capua, notwithstanding his existing attorney-client relationship with Plaintiff, never filed an appearance in this case. Jones conducted the discovery in the case, which he claims benefitted from his work for other plaintiffs against Wyndham, and the case proceeded to the point of mediation in February 2007.

---

[1] On of those defendants, Travelocity, removed the suits against it to federal court and the action proceeded before Judge Martinez, *Hogben v. Travelocity.com, Inc.,* No. 06-20478-JEM/TEM. Capua appeared for Plaintiff as counsel of record throughout 2006 and into 2007. At that point, however, Jones filed a notice of appearance in the case on March 28, 2007, as co-counsel for Plaintiff, and Jones immediately filed a stipulated dismissal of the action, which the Court accepted. The case was dismissed with prejudice on April 24, 2007.

It is at this point in time when the tumult in these lawsuits began. A mediation was convened in the *Travelocity.com* case on February 28, 2007, which would have involved only Capua as counsel for Plaintiff. Capua was informed, however, that the Travelocity's lawsuits wanted to pursue a global settlement of all the litigation involving the photo shoot in question, requiring Wyndham's participation. Thus, Jones was then present at the mediation on Plaintiff's behalf for the Wyndham litigation. The mediation proved unsuccessful, however. Plaintiff intended at that point to proceed with his lawsuits. That was the case at least until March 20, 2007, when Capua received a letter from Jones, purportedly acting at Plaintiff's direction, who advised Capua that the Wyndham litigation could not be settled unless the related actions were dismissed. Thus, Jones requested that Capua immediately file voluntary dismissals without prejudice in each of those related actions.

Needless to say, Capua was not pleased by how he was being under-cut, according to him, by Jones from his rightful fees from the related actions. Capua claims that at no time did Plaintiff or Jones offer to share any of the fee from the Wyndham action with him. As a result, he filed the pending Notice of charging lien to protect his interests and prevent Plaintiff/Jones from depriving him of fees generated in the related actions. As further evidence of this, he later learned that Jones had allegedly stipulated to the dismissal of the *Travelocity* action before Judge Martinez without his consent. When Capua later objected, the Court indicated to him that there was nothing that the Court could do given the stipulated dismissal. He would also later learn that a second mediation had taken place, without his knowledge or participation, in which the parties had reached a global settlement of the Wyndham and the related actions.

Based upon these circumstances, Capua argues that, to protect his rightful interest to the fees he generated through his work on the related actions, a charging lien

in this action should be adjudicated because his work on those related actions contributed to the ultimate recovery in this case. Capua argues that Plaintiff and Jones have conspired to deprive him of his well-deserved fee for his work in the related actions. Capua relies on state law charging lien principles as support for his argument that this Court may adjudicate his charging lien and order the payment of the portion of the global recovery that he is entitled to for his work on the other actions. Capua concedes, however, that at no time did he appear as counsel of record in this case, nor did he perform any tasks directly on this litigation. Capua relies, instead, on the contention that the work he performed in the related actions benefitted the ultimate recovery obtained in the settlement of this case.

For his part, Jones defends Capua's substantive arguments by stating that the decision to dismiss the related actions was at all times made by Plaintiff, as was his right to do as the interested litigant. Plaintiff was concerned that weaknesses in the related actions were hampering his efforts at receiving a material settlement of the original Wyndham litigation. Thus, according to Jones, Plaintiff made the decision to narrow his focus and dismiss the related actions to focus his settlement efforts on the Wyndham case. Jones argues that there was nothing nefarious about that judgment and that Plaintiff had the right to direct Capua to end the litigation in whatever terms Plaintiff wanted because they were his cases, not Capua's. Additionally, Jones argues that any work performed in the related actions was not useful in the prosecution or resolution of this action, thus even if Capua had a right to pursue his fee dispute in this litigation he would ultimately not be entitled to any portion of the fee generated from this settlement.

But Jones's primary argument in opposition to the charging lien is procedural. Jones argues that under Florida charging lien principles an attorney cannot recover on a charging lien in this case for work done in other cases. Jones points out that Capua

was never counsel of record in this case, only Jones was, and that Plaintiff never entered into a contract to pay Capua from any proceeds in this case. Therefore, Capua is not entitled to recover on his charging lien and all proceedings related thereto should be dismissed.

## II.   ANALYSIS

### A.   *The Court Lacks Jurisdiction*

The federal courts are courts of limited jurisdiction. We possess only the power strictly authorized by the Constitution and statute. *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994). The court's jurisdiction cannot be be expanded merely through judicial decree. *Id.* (citations omitted). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (internal citations omitted).

With the underlying claims in this litigation now being settled and dismissed, this Court's jurisdiction would ordinarily be extinguished. Any contractual dispute between Capua and Plaintiff, his client, or Jones, his client's other lawyer, would be governed by state law. That dispute gives rise to no claims arising under federal law. And Capua, Plaintiff, and Jones are all residents of the state of Florida; thus, diversity of jurisdiction is lacking. Accordingly, such dispute(s) would normally be beyond the limited jurisdiction that this federal court would have. State courts, which do have general jurisdiction, would be the appropriate fora to litigate those disputes.

There are narrow exceptions, however, to the general rule. One such exception, the doctrine of ancillary jurisdiction – that has been codified in part through federal statute, 28 U.S.C. § 1367 – "recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them." *Id.* at 378. Justice Scalia's opinion for the Court in *Kokkonen* described this

ancillary jurisdiction as a way "to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Id.* at 379-80. The Court, however, emphasized that the doctrine's limits are quite narrow. "[N]o controversy can be regarded as dependent or ancillary unless it has direct relation to property or assets actually or constructively drawn into the court's possession or control by the principal suit." *Id.* (quoting *Fulton Nat'l Bank of Atlanta v. Hozier,* 267 U.S. 276, 280 (1925)).

As other cases have described it, ancillary jurisdiction "rests on the premise that a federal court acquires jurisdiction of a case or controversy in its entirety," *Jenkins v. Weinshienk,* 670 F.2d 915, 918 (10th Cir.1982), and "may extend to claims having a factual and logical dependence on 'the primary lawsuit.'" *Peacock v. Thomas,* 516 U.S. 349, 355 (1996) (citations omitted). "The basis of the doctrine of ancillary jurisdiction is the practical need 'to protect legal rights or effectively to resolve an entire, logically entwined lawsuit.'" *Id.* (quoting *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 377 (1978)).

Ancillary jurisdiction is thus not a permissive doctrine; rather, it represents the "constitutional limits of federal judicial power." *Owen Equip.,* 437 U.S. at 371. Although a district court's exercise of ancillary jurisdiction is discretionary, the court must be cautious in its willingness to expand its jurisdiction. *See, e.g., Foster v. Bd. of Trs. of Butler County Comm. Coll.,* 771 F. Supp. 1118, 1120 (D. Kan. 1991).

One well recognized application of this narrow doctrine is the resolution of disputes between a party to a federal lawsuit and that party's attorneys over the proper amount of fees due the attorneys for work performed in the lawsuit. *See, e.g., Gottlieb v. GC Financial Corp.,* 97 F. Supp. 2d 1310 (S.D. Fla. 1999) and *Zaklama v. Mount Sinai Medical Center,* 906 F.2d 650 (11th Cir. 1990) (both adjudicating post-judgment attorneys' fees

disputes under Florida law charging liens); *see also Rivera-Domenech v. Calvesbert Law Offices PSC,* 402 F.3d 246, 250 (1st Cir. 2005) ("Courts have rested the exercise of jurisdiction over [attorney-client] fee disputes related to proceedings before them on the doctrine of ancillary jurisdiction."); *Garcia v. Teitler,* 443 F.3d 202, 207-09 (2nd Cir. 2006) (federal courts have ancillary jurisdiction to address attorney fee disputes in ongoing criminal cases); *Garrick v. Weaver,* 888 F.2d 687, 690 (10th Cir. 1989) (quoting *Jenkins,* 670 F.2d at 918: "It is well established that '[d]etermining the legal fees a party to a lawsuit properly before the court owes its attorney, with respect to the work done in the suit being litigated, easily fits the concept of ancillary jurisdiction.'"); *Foster,* 771 F. Supp. at 1120 ("Courts have exercised ancillary jurisdiction over disputes between attorneys and clients over the proper amount of attorneys' fees due to the attorneys for work performed in the underlying litigation.").

In the context of attorney fee disputes, the exercise of ancillary jurisdiction is particularly appropriate because courts have inherent jurisdiction to supervise the bar and to insure compliance with the reasonableness standard set forth in the attorneys' rules of ethics and professional responsibility. *E.g., Garcia,* 443 F.3d at 207; *Rosquist v. Soo Line R.R.,* 692 F.2d 1107, 1111 (7th Cir. 1982); *In re Michaelson,* 511 F.2d 882, 888 (9th Cir. 1975); *Broughton v. Voss,* 634 F.2d 880 (5th Cir. 1981) ("The basis for exercise of this ancillary jurisdiction is the responsibility of the court to protect its officers . . . and the power of the court 'to do full and complete justice.'") (internal citations omitted).

The supplemental jurisdiction statute, as amended and codified at 28 U.S.C. § 1367, incorporated these concepts of ancillary jurisdiction (plus the related concept of "pendent" jurisdiction) into "supplemental" jurisdiction: "… in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental

jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ."

From this it is clear that had Jones filed a charging lien in this case, as attorney of record and arising from a dispute that Jones had with Plaintiff as to the payment of the fee, then the Court would correctly exercise supplemental jurisdiction over that dispute through the charging lien proceeding. And, that proceeding would indeed be governed by Florida law, as Capua now argues.

But the dispute here does not fall within that well-established category. Capua concedes that he was never counsel of record in this litigation. He admittedly was retained by Plaintiff under a contract that recognized that this litigation was already pending under the control of another lawyer. [D.E. 96-2 at 3 (Aff. of Peter Capua ¶¶4-7)]. Capua's claim to the recovery of his fees from this Wyndham litigation is a by-product of his work on *other* cases, only one of which was even in federal court. The cases the Court has found that relate to this unique circumstance all hold that Capua cannot pursue his claims in this litigation.

Under an accepted four-factor test for district courts to apply when determining whether to exercise ancillary jurisdiction, we must consider the following factors: (1) an ancillary matter should arise from the transaction that was the basis of the principal proceeding, during the course of the principal proceedings, or as an integral part of the main proceeding; (2) the federal court should be able to determine the matter without a substantial new factfinding proceeding; (3) failing to determine the matter should not deprive a party of any important procedural or substantive right; and (4) the matter should be decided if necessary to protect the integrity of the principal proceeding or insure that its disposition is not frustrated. *Jenkins,* 670 F.2d at 918.

Applying this formulation of the necessary elements, Capua's claims fail the test, just as they did in *Jenkins.* First, his dispute with Plaintiff/Jones is not an integral part of the main proceeding. Capua's claims arose directly out of other proceedings on behalf of Capua, in which presumably he may be able to file a charging lien if that court permits. Second, the court would be unable to resolve the fee dispute without substantial factfinding on the breach of contract issue that involves six other pieces of litigation, two years' worth of legal services, and a different representation agreement than the one normally subject to a charging lien in this case. As Capua's pending motions to compel illustrate, these extraneous claims will require substantial discovery and can only be resolved after an extensive evidentiary hearing. Third, the court will not deprive the parties of their rights by declining to decide the fee dispute. Capua was never a party to this action. He can proceed with charging lien proceedings in the actions in which he was counsel of record, or he can sue Plaintiff separately in state court for breach of contract, together with a claim theoretically against Jones for tortious interference. And, fourth, we do not find that this fee dispute must be decided here to protect the integrity of the underlying litigation or to insure that its disposition is not frustrated. Resolution of this fee dispute is clearly not necessary to render complete justice to the parties and lawyers who appeared in this lawsuit. As Judge Martinez concluded in the dismissal of the *Travelocity* lawsuit, this action may simply be dismissed pursuant to the stipulated dismissal and all parties may go hence without day.

Therefore, in the Court's view the doctrine of ancillary jurisdiction cannot possibly apply to the dispute raised by Capua, regardless of whether his factual allegations are true or his claims of unjust treatment by Plaintiff and Capua legitimate. As the cases described above highlight, ancillary jurisdiction is designed, narrowly, to protect the parties to the litigation itself – not third parties like Capua who are affected by the

outcome of the litigation only tangentially. His claims do not have a "factual and logical dependence on the primary lawsuit." *Peacock v. Thomas,* 516 U.S. at 355. Capua is not counsel of record in the "lawsuit properly before the court" and his claims do not arise from "work done in the suit being litigated . . . ." *Garrick v. Weaver,* 888 F.2d at 690 (quoting *Jenkins,* 670 F.2d at 918). His claims clearly do not arise from "work performed in the underlying litigation." *Foster,* 771 F. Supp. at 1120.

This analysis of the Court's lack of jurisdiction here is by no means novel. In *Pay Television of Greater New York, Inc. v. Sheridan,* the Second Circuit affirmed a district court's refusal to exercise ancillary jurisdiction over a fee dispute very much like this one. An attorney who represented a plaintiff in a federal copyright case moved to withdraw in that litigation following a fee dispute with the client. The attorney's fee claim, however, was not limited to work done on that case. Instead, the attorney sought to have the district court adjudicate his claim to fees generated in other "related actions" that involved similar claims and from which the attorney also did not receive payment. The district court declined to exercise jurisdiction and the appellate court affirmed. 766 F.2d 92, 94-96 (2d Cir. 1985). As the court explained,

> The district court's jurisdiction to fix fees stemmed from its power to control the case before it; a case between [plaintiff] and the sellers of the complained of equipment. [Counsel] was not a party to that suit and diversity between him and his client did not enlarge the district court's limited ancillary jurisdiction over the fee dispute. With these two principles in mind, we believe that Judge Glasser's decision to abstain from setting fees was a sound exercise of his discretion. [T]he majority of the fees requested by Sheridan arose from work unrelated to the action before the court and thus the court lacked jurisdiction to fix those fees.

*Id.* at 94.

Capua's claims, similarly, are beyond this Court's jurisdiction because he too is seeking fees for work directly related to actions that were not before this Court. He

concedes that he did no work directly in this litigation. Thus, the Court should decline to exercise jurisdiction over his claims, which a Florida state court will clearly have the power to adjudicate. *See also Indu Craft, Inc. v. Bank of Baroda,* 1996 WL 556935, *3 (S.D.N.Y. Oct. 1, 1996) (citing *Pay Television,* exercising ancillary jurisdiction over lawyer's fee dispute *except* as to work performed for client on other litigation not before the federal court; "Even assuming the validity of the second retainer agreement, when fixing the amount of the lien on the judgment procured in this action, the court may only consider the hours spent on this action.").

This too was the holding of the Tenth Circuit in *Jenkins,* which involved a lawyer who represented a client in multiple actions, including the one directly at issue in *Jenkins.* After the lawyer withdrew, he later sought his fees through a charging lien proceeding in that case, but the fees being sought extended to the work he performed for the client in other cases. The district court refused to recognize the charging lien beyond those fees actually generated for work done on that litigation. The lawyer appealed, but the Tenth Circuit affirmed. 670 F.2d at 917-18. Again, the determinative factor was that the Court's ancillary jurisdiction was limited to a fee dispute directly arising from work done on that case:

> Determining the amount of fees a party owes its attorney with respect to legal work that has nothing to do with the case before the court presents problems under the ancillary jurisdiction concept. Except for the attorney's assertion of a retaining lien and consequent refusal to give up papers relevant to the dispute before the court, the attorney-client dispute does not relate to the case before the court. In no real sense does the dispute arise from the transaction that was the basis of the principal proceeding, nor is it an integral part of that proceeding. . . . We believe that the federal court has no jurisdiction to adjudicate the amount of fees properly owing between Jenkins and his clients with respect to matters unrelated to litigation before the court. To hold otherwise would open the federal courts to possible manipulations to circumvent diversity requirements . . . .

*Id.* (citing *National Equip. Rental, Ltd. v. Mercury Typesetting Co.,* 323 F.2d 784, 786 (2d Cir. 1963) ("The law seems well settled that a federal district court may condition the substitution of attorneys in litigation pending before it upon the client's either paying the attorney or posting security for the attorney's reasonable fees and disbursements, as these may be determined. . . . However, no court has gone so far as to hold that a district judge may condition substitution upon payment of fees earned in matters unrelated to the pending litigation.")).

Finally, under the supplemental jurisdiction statute, the Court may "may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction, or . . . there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(3-4). For the reasons articulated above, and in accordance with the supporting cases we relied upon, the Court finds that supplemental jurisdiction should not be exercised over Capua's claims. To involve a federal court, after the underlying claims have been dismissed, over a lawyer's fee dispute that is generated from work performed in other actions is an undue extension of the supplemental jurisdiction statute.

Capua's response to the pending motion to strike the charging lien never addressed this issue of federal jurisdiction, choosing instead to rely on the principle that this Court should follow Florida law in adjudicating his claim. It goes without saying that Florida law cannot confer on this Court federal subject matter jurisdiction. Only the Constitution and federal statutes can do that. Under federal law, this Court lacks jurisdiction to adjudicate Capua's claims where Capua never appeared as counsel of record in this case.

### B. *The Charging Lien is Improper Under Florida Law*

The Court could stop here in its discussion based upon the absence of federal jurisdiction to adjudicate Capua's charging lien. But, in the interest of completeness, the Court has also reviewed Florida law with respect to the proper extension of charging liens under circumstances like this one. That review has revealed that even Florida law deprives the Court with power to adjudicate this charging lien.

Florida common law defines a charging lien as a mechanism by which an attorney may enforce her equitable right to have costs and fees owed for legal services secured by the judgment or recovery in a lawsuit. *See Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, P.A. v. Baucom,* 428 So. 2d 1383, 1384 (Fla.1983); *Flynn v. Sarasota County Pub. Hosp. Bd.,* 169 F. Supp. 2d 1363, 1368 (M.D. Fla. 2001). "No statutes outline the requirements for valid attorney's liens in Florida. Rather case law acts as the sole guide for both attorneys and courts as to these liens." *Daniel Mones, P.A. v. Smith, Inc.,* 486 So. 2d 559, 561 (Fla. 1986). All proceedings in Florida to resolve an attorney's charging lien for legal services are equitable in nature. *See Nichols v. Kroelinger,* 46 So. 2d 722 (Fla.1950).

To impose a charging lien, a court in equity must find: (1) an express or implied contract between the attorney and client; (2) an express or implied understanding that payment is either contingent upon recovery or will be paid from the recovery; (3) an attempt by the client to avoid paying or a dispute as to the amount of the fee; and (4) a timely notice of a request for a lien. *E.g., Sinclair,* 428 So. 2d at 1385; *Gottlieb,* 97 F. Supp. 2d at 1311. Capua argues that he has met all these elements in filing his charging lien.

The Court disagrees because on its face the elements of a charging lien in this litigation have not been met, principally because the record reveals no "express or implied

understanding that payment is . . . contingent upon recovery" in this case. To the contrary, Capua concedes that his ageement with Plaintiff for filing the related actions acknowledged the existence of this federal action against Wyndham and did not expressly confer on Capua with any right to recover fees from this litigation. Having failed to allege that his contingent fee under his contract was to be determined in part from the recovery obtained in this case, Capua's charging lien is a nullity.

Second, the Court finds that under current Florida law a charging lien only applies to legal services rendered in the case that produced the recovery, absent an express contractual provision to the contrary. *Jaye v. Royal Saxon, Inc.,* 687 So. 2d 978 (Fla. 4th DCA 1997) ("Fees and charges incurred outside of a suit are not, absent special circumstances, covered by a charging lien."). As Capua points out, the court in *Jaye* did state that "special circumstances" could result in a different outcome. But the Court has found no case where that exception has ever been applied, and indeed does not know what special circumstances the court was contemplating.

But even if there are such circumstances available, this is not the case to apply them. Unlike a court of general jurisdiction that may have the power to apply that exception, a court with limited federal jurisdiction should not do so. Moreover, the facts here belie such a claim, because Capua knew all along that this was a principal case that his client was pursuing to recover damages in the case. Had he wanted to be protected he could have tried to appear as co-counsel with his client's permission. The record lacks any evidence that he ever tried to do so or even contemplated doing so. Under those circumstances, where the lawyer did not protect himself by seeking that avenue, the Court sees no reason to bend the normal contours of a charging lien proceeding to afford him relief. That is especially true where a perfectly appropriate forum is available to adjudicate his dispute.

Third, the Court also disagrees with Capua's interpretation of the decision in *Sohn v. Brockington,* 371 So. 2d 1089 (Fla. 1st DCA 1979), as being a case that supports the application of a Florida charging lien here. Capua suggests that the lawyer in that case was retained for only one proceeding, but was able to obtain a charging lien in another lawsuit like he seeks to do here. The obvious difference, however, is that the lawyer in *Sohn* had a general agreement with the client from the outset to represent him in connection with a personal injury. That agreement would have included a workmen's compensation claim as well as, if possible, a tort claim that could reap greater damages. The lawyer performed the work in the first part of that representation, but was discharged before the tort claim was filed. He was thus able to obtain a charging lien for a quantum meruit recovery for the services he rendered prior to his discharge. *Id.* at 1091.

Here by contrast, Capua never entered into a representation agreement for a broad claim, from which separate actions would have been necessary *including* this one. Instead, the federal action was admittedly already pending, and Capua was retained to represent the client in other proceedings and with the understanding that he would not be appearing in this case. That is very different from the representation agreement in *Sohn.* Thus, Capua's argument that *Sohn* provides him an avenue of relief here under Florida law is simply not correct.

Finally, other charging lien principles under Florida law further support the Court's conclusion that Capua's charging lien must be stricken. A charging lien will not generally attach to anything other than the "tangible fruits" of the lawyer's services. *Correa v. Christensen,* 780 So. 2d 220 (Fla. 5th DCA 2001). That means that "[b]y definition, an attorney's charging lien cannot attach to property not involved in the suit and not before the court." *Cole v. Kehoe,* 710 So. 2d 705, 706 (Fla. 4th DCA 1998); *see also Franklin & Marbin, P.A. v. Mascola,* 711 So. 2d 46, 53 (Fla. 4th DCA 1998) (charging lien proceeding

only applies when "identifiable property recovered as a result of the lawyer's labors"); *Litman v. Fine, Jacobson, Schwartz, Nash, Block & England, P.A.,* 517 So. 2d 88, 92 (Fla. 3d DCA 1987) ("the lien will attach only to the tangible fruits of the services").

Here, Capua's charging lien filed in this case cannot attach to property that was not involved in the lawsuits he filed and not before the Court in which he appeared. Although his work may have indirectly benefitted the recovery here, sufficient to give rise to a quantum meruit claim, that work does not give rise to an equitable charging lien in an action foreign to him. His claim, to the extent it has any legs at all, must be filed in the ordinary course of a contract action in state court. In other words, his equitable lien never attached to the recovery in this case, because he never worked on this case.

### III. CONCLUSION

For these reasons, neither Federal nor Florida law allow this Court to adjudicate Capua's charging lien. The lien is indeed a nullity and must be stricken, without prejudice of course to Capua pursuing his lawful claims against Plaintiff or Jones in state court. And because his charging lien action cannot proceed in this Court, his motion to formally intervene must be denied, and his discovery efforts must be rejected.

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Plaintiff's Motion to Strike Peter Marcellus Capua's Charging Lien [D.E. 89] and Supplemental Motion to Strike [D.E. 90] are **GRANTED**. The charging lien is STRICKEN but without prejudice to similar claims being raised in other proceedings.

2. Plaintiff's Motion to Prohibit Distribution of Settlement Funds [D.E. 94] is **DENIED**.

3. Peter Capua's Motion to Intervene [D.E. 97] is **DENIED**.

4. Plaintiff's Motion for Hearing/Oral Argument [D.E. 103] is **DENIED AS MOOT**.

5. Peter Capua's Motion to Compel Documents Responsive to First Request for Production Directed to Plaintiff Omar Hogben and his Counsel, William R. Jones, III, [d.e. 109] is **DENIED AS MOOT**.

6. Peter Capua's Motion to Compel Documents Response to Subpoena Served on Laura Besvinick, Esq., c/o Hogan & Hartson LLP [D.E. 110] is **DENIED AS MOOT**.

7. Peter Capua's Motion to Compel Documents Response to the First Request for Production Directed to Jose A. Casal as Counsel for Wyndham International, Inc. [D.E. 111] is **DENIED AS MOOT**.

8. Peter Capua's Motion to Compel Documents Response to the Subpoena Served on Laura Besvinick, Esq., c/o Hogan & Hartson LLP [D.E. 118] is **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 1st day of August, 2007.

EDWIN G. TORRES
United States Magistrate Judge

Copies provided to:
All Counsel of Record